Curia, per O’Neall, J.
In this case, when before the Court of Errors, 1 Rich. 507, it was ruled that the surety, the defendant, should be let into an examination of the decree, for the purpose of “ ascertaining his just and legal liability.” To do this it was held that the decree was only prima facie evidence against him, and might be rebutted by evidence on the part of the surety, to shew that it should not bind him as it did the principal. In the course of the opinion it is said the surety, the defendant, is not privy to that judgment. But that must be understood in a qualified sense; tor if the defendant was wholly a stranger to the case, it would not be any evidence to shew his liability. But he has undertaken to guarantee the defendant in the very particular in which the judgment in equity condemns him, and hence it is conclusive that the administrator has failed to fully account, but not that he is in default in every particular, and to the amount set out in the decree. As a general proposition, I hold that where any matter belongs peculiarly to the jurisdiction of one court, and other courts can only take cognizance of the same subject indirectly and incidentally, the latter are bound by the sentence of the former and must give credit to it. Robertson vs. Lady Stallage, Cro. Jac. 186 ; Dacosta vs. Villa Real, 2 Stra. 961. The case before us falls within that rule. The account of the defendant’s principal belongs exclusively to the Courtof Equity. Here (in a court of law,) we are called on incidentally to take cognizance of the same matter, by giving effect to the decree, and unques *462 tionably we must give credit to it as a subsisting decree. It certainly was, in the beginning, stretching legal principles as far as they would bear, to hold that it was only prima facie evidence; for the general rule is invariable that “until the judgment of a court of competent jurisdiction, upon the same matter, is reversed in a course of regular proceedings on it, a resort to any other tribunal, or to the same tribunal, for its judgment on the same controversy, is inadmissible.” Cottom vs. Cottom, 4 Rand. 192. It is true that fraud in the court pronouncing the judgment, might, on a proper course of proceedings, set it entirely aside, and make it void against every one ; but how any other court can do that, I do not understand. That a court called on to enforce the judgment incidentally, as where it is a part of the plaintiff's title, or where it is evidence of damages, may examine whether it was not fraudulently obtained against the party making the allegation, who is a stranger to the record, is unquestionable. So, too, by our decisions, a surety, although not entirely a stranger to the recovery, is allowed to shew that his principal, fraudulently or accidentally, has been charged with matters with which he ought not to have been, or not credited with matters with which he should have been. This is, it is true, shewing fraud in the recovery, but still it was not shewing, as was proposed in this case, that the decree was fraudulent and void as between the parties and privies. This could not be done on the principle ruled by the Court of Errors ; for the case of the Ordinary vs. Wallace, 1 Rich. 507, assumed that the decree is evidence, prima facie, it is true, against the surety, yet that very assumptian negatives the notion that in a law court the surety could shew that it was wholly void for fraud or any other c-ause. Such a position would compel us to review, in extenso, every equity decree given in evidence to charge the surety to an administration or guardianship bond, and make us assume a jurisdiction, that of auditing administrators’ and guardians’ accounts, which we never had, and which I hope we never shall have. The defendant, however, was really allowed the benefit of every thing in or against the decree, which could be considered to operate as a fraud against him. In the language *463 of my brother Butler, he was allowed to shew what was “ his just and legal liability.” When that was done, it was vain to talk about fraud in the decree. All the fraud which ever had been in it, was expunged by the process of surcharging and falsifying, which the defendant enjoyed as amply as he could have done if the account had been opened in Chancery. So much for the first ground of appeal, which, when thus considered and explained, is found free from diificulty.
In the second ground, when properly understood, there is as little difficulty. The matter proposed to be drawn in controversy here, formed in no way any part of the case in Equity. It was alleged that A. W. Daley, the child of John Daley, deceased, had received part of his father’s real and personal estate, of which his mother was entitled to one third. The answer to that is clear, that the administrator of Sarah Daley must first establish this demand against A. W. Daley, or that by some proceeding in equity. at the instance of the surety, against Daley and her administrator, he (A. W. Daley,) must be allowed the oppor-' tunity of contesting the allowance of this claim, and having the accounts between him and his co-distributee properly audited. So, too, it may be, for aught we can know, that in a course of due administration, the administrator of Sarah Daley may be compelled to apply a part of this very fund to the payment of other debts. It is true, in equity, the claim now set up might be allowed as an equitable set off; but we are not Judges of Equity ; we are supposed, by the strictness of our forms and proceedings, to be incapable of administering it. And I am sure every day’s experience tells us that we have quite enough to do to administer law, without undertaking to carry out and enforce equitable doctrines. The motion is dismissed.
Evans and Frost, JJ. concurred.